UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CURTIS RHODES**                     **CASE NO.  3:20-CV-00319**

**VERSUS**                            **JUDGE DOUGHTY**

**AURORA CARES L L C**                **MAG. JUDGE KAREN L. HAYES**

<u>**REPORT AND RECOMMENDATION**</u>

Before the Court are a motion to dismiss for lack of personal jurisdiction, Fed. R. Civ. P.
12(b)(2), and for failure to state a claim upon which relief can be granted, Fed. R. Civ. P.
12(b)(6), by Defendant Aurora Cares, LLC, [doc. # 12]; a motion to dismiss for failure to state a
claim, Fed. R. Civ. P. 12(b)(6), by Defendant Lisa Davis, [doc. # 17]; and a motion to remand by
Plaintiff Curtis Rhodes [doc. # 19]. For the following reasons, it is recommended that the motion
to remand [doc. # 19] be DENIED; that the motion to dismiss by Lisa Davis [doc. # 17] be
GRANTED, and the claims against her DISMISSED WITHOUT PREJUDICE; and that the
motion to dismiss by Aurora Cares, LLC, [doc. # 12] be DENIED. Further, the alternative
motion to stay pending the outcome of the medical review panel [doc. # 12] should be
GRANTED.

<u>**Background**</u>

This litigation arises from events that allegedly occurred during Plaintiff Curtis Rhodes's
residency at Bernice Nursing and Rehabilitation Center. [doc. # 2]. According to Rhodes, while
he resided at Bernice from November 28, 2018, to March 9, 2019, Bernice failed to provide him
with appropriate and required nutritional and hydration care. [doc. # 2, p. 2]. Rhodes further

claims that Bernice "failed to properly assess, care plan, and prevent [his] 20% weight loss," "failed to prevent decubitus ulcers from developing," and diminished his ability to ambulate independently. [doc. # 2, p. 2]. Plaintiff alleges his injuries "were caused solely and entirely by the negligence, and/or fault of the DEFENDANTS, and/or through [Bernice]." [doc. # 2, p. 3]. Based on these same allegations against Bernice, Rhodes initiated the formation of a Medical Review Panel pursuant to La. R.S. 40:1231.8. [doc. # 2, p 1-2].

Plaintiff also alleges that Defendant Lisa Davis was the administrator of Bernice and that she made certain management decisions during his residency which caused Bernice's staff to provide negligent care. [doc. # 2, p. 4]. According to Plaintiff, Defendants, "through [Bernice]," owed him a duty to provide the necessary medical care, but "failed to meet this duty, thereby causing [him] injury." [doc. #2, p. 5]. Further, Plaintiff asserts that Aurora Cares is the "manager" of Bernice and, along with Davis, allegedly failed to create and implement "policies and procedure for the operation of the FACILITY," causing Bernice to violate state and federal law, which led to Plaintiff's injuries. [doc. #2, p. 4-5]. Rhodes further alleges that Davis "failed to have the resources or the staff on hand to manage the care of residents like [him]." [doc. # 2, p. 4]. Finally, Rhodes alleges Davis and Aurora Cares underfunded and understaffed Bernice "in both number and training," which resulted in Bernice's failure to provide adequate care. [doc. # 2, p. 4].

On February 21, 2020, Rhodes sued Defendants Aurora Cares and Lisa Davis in the 3rd Judicial District for the Parish of Union, State of Louisiana. Aurora Cares was served through its agent for service of process on March 2, 2020. Davis was served personally on February 25, 2020. On March 11, 2020, Aurora Cares removed the case to this Court, alleging complete diversity of citizenship exists among the properly joined parties and the amount in controversy

exceeds $75,000. [doc. # 1, p. 2-4]. In its notice of removal, Aurora Cares stated Plaintiff is a resident of Louisiana, defendant Aurora Cares is a resident of New York,[1] and defendant Lisa Davis has been improperly joined in the proceeding. [doc. # 1, p. 2-4].

On April 7, 2020, Rhodes filed a motion to remand. [doc. # 17]. On April 28, 2020, defendants filed their response in opposition. [doc. #s 32; 33]. Attached was the declaration of Lisa Davis stating she did not become the Administrator of the facility until April 18, 2019, approximately six weeks after Rhodes was discharged from the facility. [doc. # 32-3]. On May 5, 2020, Rhodes filed his reply. [doc. # 34]. Thus, the motion is ripe.

On March 30, 2020 Aurora Cares filed a motion to dismiss for failure to state a claim and for lack of personal jurisdiction. [doc #s 12; 13]. Aurora Cares claims that it does not have systematic or continuous contacts in Louisiana such that it is subject to general personal jurisdiction in this Court, and that it is not subject to specific personal jurisdiction either. [doc. #s 12; 56]. Further, Aurora Cares claims that Plaintiff has no possibility of recovery and has failed to state a claim under Fed. R. Civ. P. 12(b)(6). [doc. #s 12; 56]. On November 3, 2020, Rhodes filed a memorandum in opposition. [doc. # 49]. On November 17, 2020, Aurora Cares filed a reply to the response to the motion to dismiss. [doc. # 56]. Accordingly, the motion is ripe.

On April 3, 2020, Davis filed a motion to dismiss for failure to state a claim. [doc. # 17]. Davis argues that Plaintiff has failed to state a claim because (1) she was not the administrator at the time of Plaintiff's stay, and therefore cannot be held liable for Plaintiff's allegations of administrative negligence, and (2) even if she had been the manager or administrator of the

---

[1] For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008). All of Aurora Cares' members are citizens of New York. *See* Notice of Removal [doc. # 1].

facility, Plaintiff's claims sound in medical malpractice and must therefore go before a medical review panel in accordance with the Louisiana Medical Malpractice Act before Plaintiff can bring a claim against her in court. [doc. #s 17; 57]. On November 9, 2020 Rhodes filed a memorandum in opposition to the motion to dismiss. [doc. # 52]. On November 23, 2020, Davis filed a reply to the response to the motion. [doc. # 57]. Thus, the motion is ripe.

## Law and Analysis

### 1. Motion to Remand and Motion to Dismiss Claims against Lisa Davis

First, the Court must evaluate Plaintiff's motion to remand. Federal courts are courts of limited jurisdiction. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). Subject matter jurisdiction must exist at the time of removal, based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Jurisdictional facts are determined at the time of removal, not by subsequent events. *See La. v. Am. Nat'l Prop & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014).

Defendants invoked diversity jurisdiction when this case was removed, which requires an amount in controversy greater than $75,000, and complete diversity of citizenship between plaintiff and defendants. 28 U.S.C. § 1332(a); *Flagg v. Stryker Corp.,* 819 F.3d 132, 135-36 (5th Cir. 2016). Plaintiff seeks damages for his medical injuries, injuries that include decubitus ulcers, significant weight loss, malnutrition, dehydration, and pneumonia. [doc. # 2]. He seeks damages for past and future mental anguish, past and future pain and suffering, and past and future medical expenses and treatment [doc. # 2].[2] Thus, the amount in controversy exceeded $75,000

---

[2] Defendants also allege that the amount in controversy exceeds $75,000 exclusive of interest and costs. [doc. # 1].

at the time of removal. *See, e.g., Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *Raborn v. Con-Way Truckload, Inc.*, 2015 WL 6738599, at *3 (E.D. La. Nov. 4, 2015).

Defendant Lisa Davis is not diverse because she is a citizen of Louisiana. [doc. # 1]. Thus, Defendants must establish Davis was improperly joined to disregard her citizenship and avoid remand. "The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). The burden of persuasion on a party claiming improper joinder is a "heavy one." *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007)(citation omitted). The focus of the improper joinder inquiry must be "on the joinder, not the merits of the plaintiff's case." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)(en banc).

Improper joinder may be established by either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). Here, there are no allegations of actual fraud. Accordingly, the Court must determine whether it is possible for Plaintiff to recover from Lisa Davis. "[A] mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Id.* (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).

The Court may determine the ability of Plaintiff to establish a cause of action against the non-diverse party in state court in one of two ways: 1) it may look at the allegations of the complaint to determine whether the complaint states a claim against the non-diverse defendant under state law, similar to a Fed. R. Civ. P. 12(b)(6) analysis; or 2) where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*,

385 F.3d at 573. However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*. The court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis*, 326 F.3d at 646-47. Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete, and remand is required. *Id.* The existence of even a single valid cause of action against a non-diverse defendant requires remand of the entire case to state court. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) (citation omitted).

Defendants argue both that the complaint fails to state a claim for relief against Davis and that after piercing the pleadings and conducting a summary inquiry, plaintiff has no reasonable basis of recovery against the in-state defendant. [doc. # 17-1]. Although a court can choose to use either analysis, it must use only one of them. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016). Here, the Court will conduct the improper joinder analysis by piercing the pleadings.

Plaintiff claims Davis is liable because she was the manager of the facility during his stay. The allegations against her center around a theory of administrative negligence, including claims Davis helped mismanage the facility by lacking adequate staff and prioritizing profits. [doc. # 19-1, pp. 16-17] In their opposition, defendants have attached a sworn declaration from Lisa Davis. Therein, Davis says she did not make management decisions during Rhodes' stay and was not the facility's Administrator during Rhodes' stay. [doc. # 19-3, p.1]. She declares she served as the Assistant Administrator during part of his stay. [doc. # 19-3]. Plaintiff does not offer any evidence to rebut this.

The Court finds that Rhodes has misstated or omitted discrete facts that would determine the proprietary of joinder. When Rhodes was a resident at Bernice from November 28, 2018, to March 9, 2019, Davis was not serving as the Administrator and did not make management decisions at the facility. *See* [doc. # 19-3, p.1]. During Rhodes' residency, Davis was not responsible for the management of the facility, did not create and implement policies and procedures for the operation of Bernice, was not responsible for staffing at Bernice, and was not responsible for the budgeting process at Bernice. [doc. # 19-3]. To overcome this, Rhodes conflates the Assistant Administrator position with the Administrator position; however, the Assistant Administrator does *not* have managerial responsibilities. For Plaintiff's claim predicated on administrative negligence, Davis would have needed to have managerial responsibilities. During Rhodes' stay, Davis had no managerial responsibilities, and therefore she may not be held liable for her failure to responsibly manage the facility when she was not its manager.

This is a discrete fact appropriate to consider in a summary-type inquiry. *Smallwood*, 385 F.3d at 574 n.12 (providing examples of "discrete and undisputed facts" to include instances where the in-state doctor defendant did not treat the plaintiff patient "or any other fact that can easily be disproved if not true"). In sum, there is no possibility of recovery from Davis. Rhodes named Davis because she managed the facility at the time, but it is an uncontroverted fact that Davis did not manage the facility during Rhodes' stay, meaning she cannot be liable for any negligent management. [3]

---

[3] Plaintiff cites a Ninth Circuit case where a defendant attempted to avoid remand by arguing that a non-diverse nursing home administrator was fraudulently joined by the plaintiffs. *GranCare, LLC v. Thrower by and through Mills*, 889 F.3d 543 (9th Cir. 2018). There, the nursing home administrator submitted a declaration "in which she denied the allegations and emphasized her role [was] largely administrative." The Court ruled that the defendant had "not demonstrated there [was] no possibility that plaintiffs could prevail" against the administrator because "even a

The Fifth Circuit has explained that "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone," there is no improper joinder. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 283 (5th Cir. 2007)(citing *Smallwood,* 385 F.3d at 575). In such a situation, "there is only a lawsuit lacking merit." *Id.* (citing *Smallwood*, 385 F.3d at 574). Stated differently, "there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that 'the plaintiff's case [is] ill founded as to all the defendants.'" *Id.* (citing *Smallwood*, 385 F.3d at 574). Here, the rationale for the dismissal of the claims against Lisa Davis does not dispose of the claims against Aurora Cares. There is no employment relationship between Davis and Aurora Cares, and Plaintiff's misstatement of facts as to Lisa Davis has no bearing on the claims against Aurora Cares. Thus, Lisa Davis is improperly joined because there is no possibility of recovery against her.

Under these circumstances, the court lacks subject matter jurisdiction to entertain the action against Davis, and thus the claims against her must be dismissed without prejudice. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016).[4]  Further, Lisa Davis's motion to dismiss for failure to state a claim [doc. # 17] must be denied because the

---

sworn denial, of allegations does not prove their falsity" and did not insulate the administrator from liability under California law. *Id*. This case is inapplicable because (1) the Ninth Circuit sets forth a different standard than the Fifth Circuit and does not utilize a summary-type inquiry; and (2) the declaration provided by Davis is stronger than that of the manager in *GranCare* because Davis declares she was not the managing employee and was not involved with management decisions. The fact that Davis was not the managing employee precludes recovery.

[4] "[A]s the claim or claims against the nondiverse defendant must be dismissed without prejudice, the plaintiff is not barred from refiling those claims [against the nondiverse defendant] in state court if he so desires." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 202, n.25 (5th Cir. 2016).

court lacks jurisdiction to consider it. The remaining parties are completely diverse; thus, the Court may exercise subject matter and removal jurisdiction. 28 U.S.C. §§ 1332 and 1441.

Rhodes seeks costs and actual expenses, claiming Aurora Cares removed this action "contrary to well-settled law." The Supreme Court has held that absent unusual circumstances, attorney's fees should not be awarded under § 1447(c) when the removing party has an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). Given the undersigned recommends denying the motion to remand, attorney's fees should not be awarded. Further, even if the undersigned had recommended granting the motion, the merits put forth by Aurora Cares clearly satisfy the objectively reasonable basis standard.

## 2. Motions to Dismiss Claims against Aurora Cares or in the Alternative Motion to Stay

### a. Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2)

Determining whether jurisdiction exists over an out-of state defendant involves two inquiries: (1) whether a forum state's long arm statute permits service of process and (2) whether the assertion of personal jurisdiction violates due process. *Athletic Training Innovations, LLC v. eTagz, Inc*., 955 F. Supp. 2d 602, 611–12 (E.D. La. 2013)(citing *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). Under Louisiana's long-arm statute, a Louisiana court "may exercise personal jurisdiction over a nonresident on any basis consistent with . . . the Constitution of the United States." La. R.S. 13:3201(B). The limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, so the inquiry is simply whether this Court's exercise of jurisdiction over Aurora Cares would offend due process. *eTagz, Inc*., 955 F. Supp. 2d 612; *see also Luv N' Care, Ltd. v. Insta–Mix, Inc*., 438 F.3d 465, 469 (5th Cir. 2006)).

General jurisdiction exists over a non-resident defendant limited liability company when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020)(citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction confers personal jurisdiction even when the cause of action has no relationship to the 'continuous and systematic' contacts. *eTagz, Inc*., 955 F. Supp. 2d 612. It would be an "exceptional case" where a company's "operations in a forum other than its . . . principal place of business may be so substantial and of such a nature" as to render the company subject to general jurisdiction in that state. *Clark v. Marcus Todd Sampson Estate*, No. 6:19-CV-01202, 2020 WL 7034578, at *3 (W.D. La. Nov. 30, 2020)(quoting *Daimler A. G. v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).

Here, Aurora Cares is registered to do business in Louisiana, and is contracted with several nursing homes in Louisiana to provide administrative support and recommendations. [doc. #s 13, p 14; 49, p. 8]. However, these contacts are likely not "continuous and systematic" enough to render Aurora Cares "at home" in Louisiana. Aurora Cares is a New York limited liability company, all its members are citizens of New York, and its principal place of business is also in New York. [doc. # 13, p. 13-14]. Though Aurora Cares does some business in Louisiana, it also does business in several other states. [doc. # 13, p. 14]. Further, the Supreme Court has held that simply being registered to do business in a state and conducting some business there does not make a company "at home" in that state for purposes of general personal jurisdiction. *See Daimler*, 571 U.S. at 139. Thus, the Court finds that there is not enough "continuous and systematic" contacts with Louisiana such that Aurora Cares can be said to be "at home" in the state, and the Court cannot exercise general personal jurisdiction over Aurora Cares.

Specific jurisdiction, on the other hand, exists when (1) the defendant has "minimum contacts" with the forum state and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" prong is satisfied if (1) the defendant purposefully availed itself of the privileges of conducting activities in the forum state, and (2) the cause of action arises out of or relates to those activities. *eTagz, Inc*., 955 F. Supp. 2d 612 (quoting *Autogenomics,* 566 F.3d at 1018–19). Actions, or even just a single act, may satisfy minimum contacts if by the act or acts the non-resident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) The non-resident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). *See also Ruston Gas Turbines, Inc. v. Donaldson Co*., 9 F.3d 415, 419 (5th Cir. 1993).

Finally, the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice" if such an exercise would be fair and reasonable. *See Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006); see also *Burger King,* 471 U.S. at 474. To determine if the exercise of jurisdiction would be fair and reasonable, the Court must analyze five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Clark v. Marcus Todd Sampson Estate,* No. 6:19-CV-01202, 2020 WL 7034578, at *5 (W.D. La. Nov. 30, 2020)(citing *Luv N' Care, Ltd*., 438 F.3d at 473).

Here, the three requirements for specific personal jurisdiction over Aurora Cares are met. First, Aurora Cares has "purposefully availed" itself of the privilege of conducting business in Louisiana. It provides services to several nursing homes in Louisiana and is registered to do business in the state. [doc. #49, p. 16-19]. Although Aurora Cares provides most services to its Louisiana clients, including Bernice, remotely from New York, [doc. # 13, p. 17-18], this fact does not diminish that Aurora Cares is conducting business in Louisiana by providing services to Louisiana clients. Further, Aurora Cares does not claim that *all* services are provided remotely from New York, so some of the services provided presumably are rendered by Aurora Cares employees in Louisiana. *See* [doc. # 12-2, p. 2]. Thus, Aurora Cares has "purposefully availed" itself of the privilege of conducting business in Louisiana.

Second, the Plaintiff's claims arise out of Aurora Cares' contacts with Louisiana. Plaintiff's claims arise out of Aurora Cares' relationship with and responsibilities to Bernice, and thus out of its contacts with Louisiana. Though Defendant argues that Plaintiff does not have a meritorious claim against Aurora Cares, even if Plaintiff's claim were ultimately unmeritorious, the claim itself arises from Aurora Cares' involvement with Bernice. Thus, the second prong of minimum contacts is met.

Finally, the exercise of jurisdiction over Aurora Cares is fair and reasonable. The burden on Aurora Cares is not unreasonable given that it avails itself of the benefit of conducting business within the state regularly and is contracted with several Louisiana nursing homes. The forum state (Louisiana) and Plaintiff (Rhodes) have a legitimate interest in litigating this matter in Louisiana, where Aurora Cares allegedly implemented policies and decisions that Plaintiff contends were a cause of his injury. Accordingly, traditional notions of fair play and substantial justice do not require this suit be dismissed for lack of personal jurisdiction. *See also Jones v.*

*Arcadia Nursing & Rehab. Ctr., L.L.C.*, No. CV 15-2910, 2017 WL 6816738, at *2 (W.D. La. May 24, 2017).

###  b.  Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b) permits dismissal where the claimant fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations omitted). In evaluating a motion to dismiss, "the District Court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir.1993) (citation omitted). The factual allegations need not be detailed, but they must be more than labels, conclusions, or a recitation of the elements of the claim. *Twombly*, 550 U.S. at 558. Moreover,

> the '[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)' and the non-moving party must plead 'enough facts to state a claim to relief that is plausible on its face.' This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.

*In re Southern Scrap Material Co., LLC*, 541 F.3d 584 (5th Cir.2008) (internal citation omitted). Nonetheless, a 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982). Finally,

"[o]n a Rule 12(b)(6) motion, a district court generally 'must limit itself to the contents of the pleadings, including attachments thereto.'" *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)(citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000)).[5]

As a threshold issue, Aurora Cares contends that plaintiffs' negligence claims against it sound in medical malpractice and not in administrative negligence as Plaintiff alleges. [doc. # 13, p. 25]. However, the Louisiana Medical Malpractice Act ("LMMA") unequivocally provides that

[a] health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part.

La R.S. 40:1231.1(D).

To qualify for coverage under the LMMA, the health care provider must meet the statutory requirements set forth in Louisiana Revised Statute 40:1231.2(A), including paying a surcharge and filing proof of financial responsibility with the Patient's Compensation Fund Oversight Board. La. R.S. 40:1231.2(A)(1)-(2). *See also Ginn v. Woman's Hosp. Foundation, Inc.*, 818 So.2d 983, 990 (La. App. 1st Cir.2002), *reversed on other grounds*, 842 So.2d 338

---

[5] Further, Rule 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

(La.2003). Coverage under the LMMA is strictly construed. *Sewell v. Doctors Hosp.*, 600 So.2d 577, 578 (La.1992). Aurora Cares has the burden of proving that it is a qualified health care provider under the LMMA for it to derive any benefit or protection from the LMMA. *Dunn v. Bryant*, 701 So. 2d 696 (La. App. 1st Cir. 1997) (citation omitted). Here, Defendant has not met its burden because it has not shown that it has made the requisite payments and filings.[6]

According to the Louisiana Supreme Court,

> "The most significant provisions of the act fit generally in the following scheme. A health care provider (and this category includes physicians, hospitals, . . . ) has the option of qualifying under the act. R.S. 40:1299.41(A)(1). If he or she does not qualify, that person is not covered by the provisions of the statute and the patient's remedy is not affected by the terms and provisions of the statute. R.S. 40:1299.41(D). Thus the patient of a health care provider who has not qualified is no different from any other tort or contract victim, while the patient of a qualified health care provider (one who has qualified under the act) is regulated by the act insofar as malpractice recovery is concerned ."

*Ferguson v. Lankford*, 374 So.2d 1205, 1207 (La. 1979) (quoting *Everett v. Goldman*, 359 So.2d 1256, 1261–1262 (La. 1978)).[7] Relying upon *Everett v. Goldman*, the Louisiana Court of Appeal

---

[6] Further, Aurora Cares denies being a health care provider at all, qualified or otherwise. [doc. # 13, p. 20-21]. *A fortiori*, it may not avail itself of the protections and benefits of the LMMA.

[7] Although at least two Louisiana appellate court decisions indicate that a complaint may still sound in medical malpractice and be governed by the LMMA even where the defendant is not a qualified health care provider, this contravenes the plain language of La. R.S. 1231.1(D) and is contrary the Louisiana Supreme Court's interpretation of the scope of the LMMA. *Compare Everett v. Goldman*, 359 So.2d 1256, 1261–1262 (La.1978) *with Hardy v. Blood Systems, Inc*., 794 So.2d 13 (La. App. 3 Cir.2001) *and Cashio v. Baton Rouge General Hospital*, 378 So.2d 182,185 (La. App. 1 Cir.1979). *See also* William E. Crawford, *Louisiana Civil Law Treatise*, Tort Law Vol. 12 § 15.3 (2000)("the Act explicitly provides that a healthcare provider who does not qualify under the Act by filing the necessary documents and paying the necessary surcharge is not in any way affected by the Act and is subject to liability without regard to the provisions of the act, except with regard to the suspension or the running of prescription of actions.")

for the Second Circuit observed that a healthcare provider's election to be covered under the LMMA is completely voluntary. *Hill v. Brentwood Hosp., Inc*., 480 So.2d 875, 878 (La. App. 2 Cir. 1985). "In the absence of coverage, the healthcare provider is fully amenable to a tort suit." *Id.*

Absent proof that Aurora Cares was a qualified health care provider under the LMMA, the provisions and protections of the Act do not apply in this case. *See Everett*, 359 So. 2d at 1261–1262. Even if some of Plaintiffs' claim could be characterized as malpractice claims in the sense that they relate to medical treatment that Plaintiff received at Bernice Nursing facility, they are not medical malpractice claims subject to the LMMA. Accordingly, Defendant's conduct must be analyzed under principles of ordinary negligence.

To determine whether a plaintiff should recover on a negligence claim, Louisiana courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, plaintiff must establish five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id. See also Lucarelli ex rel. Taylor Estate v. D V A Renal Healthcare Inc*., No. CIV. A. 08-0406, 2008 WL 5586648, at *2–5 (W.D. La. Dec. 23, 2008), *report and recommendation adopted in*

*part sub nom. Lucarelli ex rel. Taylor v. DVA Renal Healthcare Inc*., No. CIV. A. 08-0406, 2009 WL 276526 (W.D. La. Feb. 2, 2009).

In its duty-risk analysis, the Court should identify "(1) the duty imposed upon the defendant by statute or rule of law and (2) the conduct by defendant that allegedly constituted a breach of that duty." *Id.*

Louisiana unquestionably recognizes claims for corporate or administrative negligence in the health care facility context. *See, e.g., Scio v. Univ. Med. Ctr. Mgmt. Corp*., 2019-1319 (La. 10/21/19), 280 So. 3d 1135. Indeed, the governing board of a health care facility owes a duty to select its employees with reasonable care and to furnish the facility with reasonably adequate supplies, equipment, appliances, and facilities for use in the treatment of patients. *Sibley v. Board of Sup'rs of La. State Univ.*, 477 So.2d 1094, 1099 (La.1985). "A breach of one of these duties or a similar duty of care which causes injury to a patient or other person may constitute independent negligence by a hospital's governing board, resulting in the hospital's liability even in the absence of any finding of negligent conduct by an employee." *Id.*

Here, Plaintiff has stated a claim for negligence against Aurora Cares. First, Plaintiff alleges that Aurora Cares had management authority over Bernice and thus had a duty to Plaintiff under both statute and regulation to ensure adequate staffing and funding for the facility. [doc. # 2]. Nursing facilities are required to maintain certain minimum levels of staffing and services pursuant to state and federal statute and regulation. *See, e.g.,* 42 U.S.C. § 1396r(b)(4)(A); 42 C.F.R § 483. Plaintiff contends that Aurora Cares tightly controlled decisions about staffing, budgeting, and operations at the corporate level, and therefore owed a duty to Plaintiff by virtue of its relationship with Bernice. [doc. # 2, p. 5-7]. Second, Plaintiff adequately alleges that Aurora Cares' conduct fell below the standard of care because he claims Aurora

Cares provided residents with nursing hours below the national average and had inadequate staff and/or funding to see to Plaintiff's custodial needs. [doc. # 2, p. 3-7]. Third, Plaintiff alleges that this understaffing and underfunding was the cause in fact of his injuries, including his weight loss decubitus ulcers, and other injuries. Fourth, if, as Plaintiff alleges, Aurora Cares was the entity responsible under statute and/or regulation at the corporate level for making staffing, operations, and budgeting decisions, then it follows that their dereliction of those duties were also the legal cause of Plaintiff's injuries because Plaintiff is within the scope of people the statute and regulations are designed to protect. Finally, plaintiff alleges injury because he states that he was hospitalized for malnutrition and decubitus ulcers due to the dereliction of care he experienced because of Aurora Cares' decisions. [doc. # 2]. Thus, Plaintiff has adequately stated a claim for negligence against Aurora Cares.

Aurora Cares, on the other hand, argues that it is merely a third-party contractor and that it had no authority or responsibility to make the management decisions that Plaintiff alleges caused his injuries, including understaffing and underfunding the facility. [doc. # 13]. In support of this contention, Aurora Cares attaches the sworn declaration of its Vice President, Tina Alexander, and a copy of the Administrative Services contract between Aurora Cares and Bernice. [doc. # 12-2]. However, at this stage the Court must take all of Plaintiff's well-pleaded facts as true and cannot consider evidence outside of the pleadings that is not referred to therein. *See Brand Coupon Network, L.L.C.,* 748 F.3d at 635.[8]

---

[8] Though not considered in the disposition of this motion, the Court notes that in the deposition attached to Plaintiff's opposition, the Vice President of Aurora Cares states that she is the sole member of the governing board of Bernice, and that she hired the Administrator for that facility. [doc. # 49-1, p. 42-44]. Under 42 C.F.R. § 483.70, a nursing facility "must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility . . . [and] appoints the administrator who is. . . [r]esponsible for management of the facility; and . . .

In sum, plaintiffs' complaint contains factual allegations sufficient, at this stage, to support the requisite elements of a negligence claim under Louisiana law. Thus, Defendant's motion to dismiss must be denied.

### c.  Motion to Stay Pending Medical Panel Review

Finally, Defendant's alternative motion to stay pending the outcome of the medical review panel should be granted. Although Defendant is not entitled to the protections of the LMMA, here the claims against Bernice for medical malpractice are inextricably intertwined with Plaintiff's claims against Aurora Cares for administrative negligence. Plaintiff claims that through administratively negligent staffing and budgeting, Aurora Cares caused Bernice to negligently injure him. [doc. # 2]. Plaintiff does not contest that Bernice's alleged negligence sounds in medical malpractice, and he initiated a medical review panel in connection with those claims. [doc. # 2, p. 1]. Thus, although a finding that Bernice committed medical malpractice does not necessarily establish administrative negligence on behalf of Aurora Cares, a finding that no malpractice occurred would tend to resolve Plaintiff's claim that Aurora Cares' management of Bernice caused it to commit medical malpractice. Accordingly, in the interest of judicial economy and fairness, this case must be stayed pending the results of the medical review panel. *See, e.g., Hungerford v. Smith & Nephew, Inc.*, No. 2:15 CV 2754, 2016 WL 4499461, at *2 (W.D. La. Aug. 23, 2016)(granting motion to stay pending medical review panel to avoid piecemeal litigation and inconsistent results, and to promote judicial economy); *Sousa ex rel. v. Prosser*, No. 03-2942, 2004 WL 1497764, at *4-5 (E.D. La. July 1, 2004) (granting motion to

---

is accountable to the governing body." 42 C.F.R. § 483.70(d). If the Vice President of Aurora Cares serves as the governing body of Bernice under 42 C.F.R. § 483.70(d), this could perhaps undercut Defendant's contention that Aurora Cares does not have any management authority or duties with respect to the management of Bernice.

stay to avoid piecemeal resolution, ensure consistent results, and promote judicial economy by having matters litigated only once); *Cooper v. Sofamor, Inc.*, No. 92-3111, 1993 WL 17634, at *2 (E.D. La, Jan. 15, 1993) (granting motion to stay in the interests of judicial economy because the elements of the medical malpractice claims and products liability claims could not be neatly separated); *Harris v. Breaker*, No. 06-1678, 2007 WL 1296349, at *2 (W.D. La. Apr. 13, 2007) (granting motion to stay because plaintiffs would likely need to depose at least some of the physicians or medical providers named in the medical review proceeding).

### Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that Plaintiff=s motion to remand [doc. # 19] be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiff's claims against defendant, Lisa Davis, be DISMISSED, WITHOUT PREJUDICE.

IT IS FURTHER RECOMMENDED that Plaintiff's motion for attorney's fees [doc. # 19] be DENIED.

IT IS FURTHER RECOMMENDED that Defendant Lisa Davis's motion to dismiss [doc. # 17] be DENIED because the court lacks jurisdiction to consider it.

IT IS FURTHER RECOMMENDED that Defendant Aurora Cares' motion to dismiss [doc. # 12] be DENIED.

IT IS FURTHER RECOMMENDED that Defendant Aurora Cares' alternative motion to stay pending the outcome of the medical review panel be GRANTED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any

objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

  **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

  In Chambers, at Monroe, Louisiana, this 3rd day of February, 2021.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE